UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| OMNI SPECIALTY PACKAGING, LLC AND OMNI INDUSTRIES, LLC, | :<br>:<br>: NO.<br>: |
| Plaintiffs, | :<br>: |
| VERSUS | :<br>: |
| ASPEN SPECIALTY INSURANCE COMPANY, | :<br>:<br>: |
| Defendant. | :<br>: |

## COMPLAINT FOR
## DECLARATORY JUDGMENT AND MONETARY DAMAGES

NOW INTO COURT, through undersigned counsel, come Plaintiffs, OMNI SPECIALTY PACKAGING, LLC (hereinafter "OSP") and OMNI INDUSTRIES, LLC (hereinafter "OI") (collectively, "Omni" or "Plaintiffs"), which respectfully represent as follows:

### NATURE OF ACTION

This is an insurance coverage dispute between Plaintiffs and Defendant Insurer Aspen Specialty Insurance Company. Defendant has misinterpreted the provisions of its policy and refused to unconditionally tender the undisputed portion of the claim, therefore Plaintiffs now seek reimbursement for defense costs incurred, reimbursement for indemnity and settlement costs of payments resulting from a civil action filed against the Plaintiffs in the state of Missouri, and damages and penalties pursuant to La. R.S. 22:1892 and/or La. R.S. 22:1973.

### PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff Omni Specialty Packaging, LLC is a Louisiana limited liability company with its principal place of business at 7031 Bryce Canyon Drive, Greenwell Springs, Louisiana, and therefore it is a citizen of Louisiana.

2148580v.3

**2.**

The members of Omni Specialty Packaging, LLC are Jude Palombo and the Markham Q. Palombo S. Corp. Trust. Jude Palombo is an individual citizen of Louisiana. The Markham Q. Palombo S. Corp. Trust is a Louisiana trust, the beneficiary of which is Markham Q. Palombo, a citizen of Louisiana.

**3.**

Plaintiff Omni Industries, LLC is a Louisiana limited liability company with its principal place of business at 7031 Bryce Canyon Drive, Greenwell Springs, Louisiana, and therefore it is a citizen of Louisiana.

**4.**

The members of Omni Industries, LLC are Jude Palombo, Cynthia Palombo, and the Markham Q. Palombo S. Corp. Trust.  Jude Palombo and Cynthia Palombo are individuals who are citizens of Louisiana. The Markham Q. Palombo S. Corp. Trust is a Louisiana trust, the beneficiary of which is Markham Q. Palombo, a citizen of Louisiana.

**5.**

Defendant Aspen Specialty Insurance Company ("Aspen") is a North Dakota corporation with its principal place of business at 590 Madison Avenue, New York, New York. Accordingly, Aspen is a citizen of both North Dakota and New York.

**6.**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 et. seq.  Plaintiffs' citizenship is completely diverse from the citizenship of Aspen and the amount in controversy exceeds $75,000.00.

**7.**

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2). Aspen issued and delivered to its insureds the insurance policies at issue in this matter in the Middle District of Louisiana. OSP, OI, and all members of each entity reside in the Middle District of Louisiana and a substantial part of the events or omissions giving rise to the claim occurred in this district.

**8.**

Aspen is subject to this Court's personal jurisdiction with respect to this action.

## FACTS AND CAUSE OF ACTION

**9.**

On July 20, 2018, Joe Miller and other claimants filed a class action petition (the "Miller suit") against OSP; OI; O'Reilly Automotive, Inc.; Ozark Automotive Distributors, Inc.; and O'Reilly Automotive Stores, Inc. d/b/a O'Reilly Auto Parts in the Circuit Court of Cass County, Missouri. The claimants allege various damages arising out of the manufacture, advertising, sale, and use of "303 Tractor Hydraulic Fluids," products that Omni blended, packaged, and sold to O'Reilly from its facility in Louisiana. The precise allegations are outlined in the state court petition, attached hereto as Exhibit A.

**10.**

The damages alleged in the Petition arose during a five year period, between 2013 and 2018, during which four separate insurers provided coverage to Omni.

**11.**

OSP was insured by Chubb North American Claims and Illinois Union Insurance Company (collectively, "Chubb") from October 1, 2012 to October 1, 2013.

**12.**

OSP was insured by AIG from October 1, 2013 to October 1, 2014.

**13.**

OSP was insured by Enviant from October 1, 2017 to October 1, 2018.

**14.**

OSP was insured by Aspen from October 1, 2014 to October 1, 2017.

**15.**

Aspen issued three separate commercial general liability policies to OSP: policy number ERAEH4D14; policy number ERAE4D15; and policy number ERAE4D16. These policies covered the policy periods of October 1, 2014 to October 1, 2015; October 1, 2015 to October 1, 2016; and October 1, 2016 to October 1, 2017, respectively. Aspen also issued three separate following-form policies of excess insurance to OSP: policy numbers EXAEH4E14, EXAEH4E15, and EXAEH4E16 for the periods October 1, 2014 to October 1, 2015, October 1, 2015 to October 1, 2016, and October 1, 2016 to October 1, 2017, respectively.

**16.**

Aspen also issued three separate commercial general liability policies to OI: policy number ERAEP4F14; policy number ERAEP4F15; and policy number ERAEP4F16. These policies covered the policy periods of October 1, 2014 to October 1, 2015; October 1, 2015 to October 1, 2016; and October 1, 2016 to October 1, 2017, respectively. Aspen also issued three separate following-form policies of excess insurance to OI: policy numbers EXAEP4G14, EXAEP4G15, and EXAEP4G16 for the periods October 1, 2014 to October 1, 2015, October 1, 2015 to October 1, 2016, and October 1, 2016 to October 1, 2017, respectively. Aspen policies ERAEH4D14, ERAE4D15, ERAE4D16, ERAEP4F14; ERAEP4F15; and ERAEP4F16 are hereinafter collectively referred to as the "Aspen Primary Policies," and Aspen policies EXAEH4E14, EXAEH4E15, EXAEH4E16 EXAEP4G14, EXAEP4G15, and EXAEP4G16 are hereinafter collectively referred to as the "Aspen Excess Policies."

**17.**

Each of the Aspen Primary Policies provides a $1,000,000 limit of liability, with a general aggregate limit of $2,000,000. Each of the Aspen Excess Policies provides coverage in the amount of $14,000,000. All of the Aspen Primary and Excess Policies were issued and delivered in Louisiana to Louisiana insureds and are governed by Louisiana law.

**18.**

The issuance and delivery of the Aspen Primary and Excess Policies is not disputed.

**19.**

During the periods covered by the Miller suit's allegations, OI had a contract with O'Reilly by which OI was obliged to defend and indemnify O'Reilly and to obtain commercial general liability coverage written on an occurrence basis and providing coverage for products liability, naming O'Reilly as additional insureds.

**20.**

Upon receiving service of the Miller suit, O'Reilly tendered its defense to OI.

**21.**

Upon receiving service of the Miller suit, OI promptly tendered the claim to the insurers identified in paragraphs 11 through 17 on its own behalf, on behalf of OSP, and on behalf of O'Reilly's.

**22.**

Aspen did not timely accept or reject the claim but subsequently issued a Reservation of Rights as to the claims arising during the years for which Aspen had policies, thus creating a conflict between Omni and Aspen. As a result of Aspen's delay, Omni was forced to retain counsel to protect its interests, including removal of the Miller suit to the United States District Court for the Western District of Missouri, which was accomplished on August 30, 2018.

**23.**

Aspen and Omni's other insurers were placed on notice of Omni's exercise of its right to select its defense counsel and make demand on each of its insurers to pay for the defense of Omni and O'Reilly.

**24.**

On December 11, 2018, the claimants filed the First Amended Class Action Complaint, in federal district court in Missouri, a copy of which is attached hereto as Exhibit B. Omni tendered the First Amended Class Action Complaint to its insurers with a demand for defense and indemnity of Omni and O'Reilly.

**25.**

Following receipt of the First Amended Class Action Complaint, Aspen issued a Reservation of Rights letter dated September 20, 2018, in which Aspen agreed to defend the suit in part, subject to a reservation of rights, under Policy ERAEH4D14, for the policy period of October 1, 2014 to October 1, 2015.

**26.**

In the same letter, Aspen denied coverage under the two subsequently issued policies after erroneously misinterpreting the policies' "MULTIPLE POLICIES, POLICY PERIODS" provision and BATCH CLAUSE ENDORSEMENT to conclude that only the policy for the year October 1, 2014 to October 1, 2015 provided coverage for the claims alleged in the Miller suit.

**27.**

Specifically, Aspen alleges that based on the "MULTIPLE POLICIES, POLICY PERIODS" provision, any damage alleged in the suit for which Aspen may provide coverage to Omni is deemed to have taken place during the first policy period, subject to a single "Each Occurrence" limit of liability. Aspen further alleges that under the Anti-stacking Limits

2148580v.3

Endorsement, the "Each Occurrence" limit of liability under only one policy is applicable, and further claims that under the BATCH CLAUSE ENDORSEMENT, all property damage is deemed to arise from a single occurrence. Thus, Aspen's contention is that only the policy for the period of October 1, 2014 to October 1, 2015 is implicated.

**28.**

Although damages alleged in the suit occurred over a five year period, and Aspen provided coverage for three of those years, Aspen has erroneously argued, based on its interpretation of the above described provisions, that it is responsible for only 1/5 of the total defense costs and only 1/5 of any indemnity, or the amounts allocated to the 2014 policy.

**29.**

Moreover, Aspen contends that because of its interpretation of the policy provisions described in Paragraph 26, Omni is "self-insured" for the 2015 and 2016 policy periods and that Omni, not Aspen, is responsible for the pro-rata share of defense costs allocated to those years.

**30.**

Aspen's reliance on the "MULTIPLE POLICIES, POLICY PERIODS" provision and the BATCH CLAUSE ENDORSEMENT to assert that the claims alleged in the Miller suit, as amended, arise from a single occurrence deemed to have taken place during the 2014 policy period is legally wrong and inconsistent with the factual circumstances of the alleged damages, which have been made known to Aspen, to no avail.

**31.**

The fluid produced by Omni and used in the 303 Tractor Hydraulic Fluid purportedly causing the claimants' damages is known as F46. Omni requires that each blend of F46 have certain traits that fall within a specification range or meet or exceed certain minimums, but each blend may vary with respect to certain traits and still fall within the required specification range.

**32.**

Omni blended approximately 341 blends of F46 between January 1, 2012 and November 30, 2017 (the time frame in which the Miller claimants allege their damages arose). Each blend of F46 was blended to meet Omni's specification ranges, however, the base oils and additives used to meet those specifications changed over time and from blend to blend depending on several factors, including what base products Omni had in the facility when a blend was ordered and the price of the base oils and additives. In other words, the fluid alleged to have damaged the class members did not constitute a single "batch" or blending as Aspen has wrongly contended.

**33.**

Further, during the same time frame, approximately 28 formula variations were used to blend F46. The actual ingredients of a particular blend of F46 frequently differed from the predetermined formulas, depending on materials available for use in the plant at the time, which was acceptable to O'Reilly as long as the final product met O'Reilly specifications.

**34.**

In other words, during the five year period during which the Miller claimant's damages arose, the F46 produced by Omni to be used in the 303 Tractor Hydraulic Fluid varied extensively. Dozens of different formulas were used to create over three hundred blends with different ingredients. There was never a single "batch" of this product.

**35.**

In addition, the class members each alleged individual damages to their equipment which varied as to each class member as to type, extent, duration, and occurrence of damage.

**36.**

Despite these undisputed facts, which render the BATCH CLAUSE ENDORSEMENT and MULTIPLE POLICIES, POLICY PERIODS provisions inapplicable, Aspen has continued to rely on its interpretation of those provisions.

**37.**

The parties do not dispute Aspen's obligations under the 2014 policy; rather, the dispute is over what coverage is provided by the subsequently issued policies.

**38.**

As a result of a court ordered mediation, the Miller plaintiffs made known their settlement position, including their demand for damages, most of which results from "property damage" for which the Aspen Primary and Excess Policies clearly provide coverage. Omni's insurers were represented during and participants in the mediation.

**39.**

The mediation and subsequent negotiations resulted in settlement of the Miller suit, pending court approval. Omni's insurers, including Aspen, made a proposal to contribute a percentage of the settlement amount and associated defense costs in proportion to the years each respective insurer provided coverage. Aspen's proposed contribution excluded the portion of the settlement amount and defense costs allocated to the two years for which Aspen erroneously contends its policies do not provide coverage (October 1, 2015 to October 1, 2017).

**40.**

Despite acknowledging its defense and indemnity obligations under the 2014 policy numerous times through various modes of correspondence, Aspen refused to unconditionally tender the undisputed portion of the claim and refused to pay the share of defense costs allocated

2148580v.3

to the policy year not in dispute. In fact, Aspen has yet to pay any of the amounts for the one year in dispute, despite repeated requests that it do so.

**41.**

Instead, Aspen attempted to use its economic leverage over Omni to force Omni to accept its interpretation with respect to the two disputed policy years by threatening to withdraw fully from the settlement if Omni did not so accept. In so doing, Aspen placed its own economic interests ahead of its obligations to its insureds.

**42.**

When Omni did not accept Aspen's position, Aspen did withdraw from the settlement and refused to honor its commitment to participate in the settlement even with respect to the undisputed policy year. To date, Aspen has made no payments to Omni and has breached its obligation to defend and indemnify Omni and O'Reilly as set forth in the policies issued to its insured.

**43.**

Aspen has acted in a manner that is arbitrary, capricious, and without probable cause, in violation of La. R.S. 22:1892 and La. R.S. 22:1973. As a result of Aspen's wrongful conduct, Omni incurred damages in the payment of settlement proceeds as well as the costs of defending the suit, all of which it seeks to recover herein, in addition to penalties, attorney fees, all costs of this suit, and legal interest on all amounts awarded.

**44.**

Omni incurred costs in defending the Miller claim and funded the settlement with the Miller plaintiffs at its own expense, and Omni incurred further costs defending and indemnifying O'Reilly in the Miller suit, and Omni is entitled to recover these amounts and all other such amounts as are reasonable from Aspen in addition to penalties and attorneys' fees as provided by law.

**45.**

Since the filing of the Miller suit, other class-action lawsuits asserting similar claims against Omni and other defendants have been filed in federal and state courts around the country: Sevy v. O'Reilly Automotive, Inc. et al, no. 19-02192 (D. Kan.); Rupe v. O'Reilly Automotive, Inc., et al, 19-164 (S.D. Iowa); and Guest v. O'Reilly Automotive, Inc., et al, 2019-90283700 (Ala. Cir. Ct.).

**46.**

The claims asserted against Omni in the Sevy, Rupe, and Guest lawsuits arise from the same facts, allege the same (mis-)conduct of Omni, arise from the same approximate time periods and implicate the exact same Aspen Primary and Excess Policies, and are essentially identical to the claims asserted against Omni in the Miller suit. Accordingly, the claims asserted against Omni in the Sevy, Rupe, and Guest lawsuits are covered by the same Aspen Primary and Excess Policies.

**47.**

Upon the filing of the Sevy, Rupe, and Guest lawsuits, Omni and/or its counsel timely notified Aspen of each of the new suits.

**48.**

Aspen's response to the filing of the Sevy, Rupe, and Guest lawsuits was to file a lawsuit of its own against Omni in federal court in Iowa seeking a declaratory judgment and disputing the extent to which (if any) the Aspen Primary and Excess Policies provide coverage for the claims asserted in the Miller, Sevy, Rupe, and Guest suits: Aspen Specialty Ins. Co. v. Omni Indus. LLC, et al, 19-00210 (S.D. Iowa).

**49.**

Omni will incur significant additional expense defending the Sevy, Rupe, and Guest suits and be exposed to potential liability for the claims asserted in those suits, and will incur still more

expense defending and indemnifying O'Reilly against those same claims, claims that are covered by the Aspen Policies but for which Aspen has wrongfully and in bad faith ignored its obligations to Omni under those policies. Omni is entitled to recover such amounts as are reasonable from Aspen in addition to penalties and attorneys' fees as provided by law.

## FIRST CAUSE OF ACTION
### (Money Damages)

**50.**

Omni reasserts and incorporates by reference Paragraphs 1-49 as if fully set forth herein.

**51.**

The Aspen Primary and Excess Policies provide coverage for the claims asserted in the Miller, Sevy, Rupe, and Guest lawsuits.

**52.**

Omni has incurred costs in defending the Miller claim and funded the settlement with the Miller plaintiffs at its own expense. Furthermore, Omni will incur significant additional fees, costs, and expenses defending the Sevy, Rupe, and Guest suits and be exposed to potential liability for the claims asserted in those suits. Omni is entitled to recover such amounts as are reasonable and proper under the Aspen Primary and Excess Policies.

**53.**

Aspen has acted in a manner that is arbitrary, capricious, and without probable cause, in violation of La. R.S. 22:1892 and La. R.S. 22:1973. As a result of Aspen's wrongful conduct, Omni incurred damages in the payment of settlement proceeds as well as the costs of defending the Miller suit, all of which it seeks to recover herein, in addition to penalties, sanctions, attorney fees, all costs of this suit, and legal interest on all amounts awarded.

## SECOND CAUSE OF ACTION
### (Declaratory Relief)

**54.**

Omni reasserts and incorporates by reference Paragraphs 1-53 as if fully set forth herein.

**55.**

Omni has notified Aspen that Omni believes the Aspen Primary and Excess Policies provide coverage the claims asserted against Omni in the Miller, Sevy, Rupe, and Guest lawsuits.

**56.**

Aspen disputes Omni's coverage position.

**57.**

Based on the foregoing, a real, actual and substantial controversy exists between Omni and Aspen as to whether and to what extent there is coverage under the Aspen Primary and Excess Policies for the claims asserted against Omni and O'Reilly in the Miller, Sevy, Rupe, and Guest lawsuits, and whether or not Aspen is obligated under the Aspen Primary Policies (and, to the extent they follow form, the Aspen Excess Policies) to defend Omni and O'Reilly against the claims asserted in the Miller, Sevy, Rupe, and Guest lawsuits.

**58.**

Omni is entitled to a declaration that the Aspen Primary and Excess Policies provide coverage for the claims asserted in the Miller, Sevy, Rupe, and Guest lawsuits, that Aspen has a duty to defend under the Aspen Primary and Excess Policies, and for all other legal and equitable relief.

**59.**

Omni further requests trial by jury.

**WHEREFORE,** Petitioners, Omni Specialty Packaging, LLC and Omni Industries, LLC, pray as follows:

A. That Defendant be duly served with this Complaint and cited to appear and answer same;

B. That after due proceedings are had, including trial by jury as to all claims so triable, judgment be rendered in favor of Petitioner and against Defendant, Aspen Specialty Insurance Company: (i) for all money damages as are reasonable, together with legal interest from judicial demand, (ii) declaring the Aspen Primary and Excess Polices to provide coverage for, and declaring Aspen's obligation under those policies to defend Omni and O'Reilly against, the claims asserted against Omni and O'Reilly in the Miller, Sevy, Rupe, and Guest lawsuits (as well as any future suits implicating the same alleged Omni conduct and same Aspen Policies), (iii) for all costs of these proceedings, and (iv) for statutory penalties and attorneys' fees as provided by Louisiana Revised Statutes 22:1892 and/or 22:1973 and legal interest thereon;

C. For all other general and equitable relief and/or damages as this Court deems necessary and proper.

- 15 -

Respectfully submitted,

TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P.


By: **/s/ John P. Murrill**
John Michael Parker, Bar #10321, T.A.
Harry J. Philips, Jr., Bar #2047
John P. Murrill, Bar #23878
Savannah W. Smith, Bar #38435
450 Laurel Street, 8th Floor (70801)
P.O. Box 2471
Baton Rouge, LA 70821-2471
Telephone: (225) 387-3221
Facsimile: (225) 346-8049
Email: mike.parker@taylorporter.com
skip.philips@taylorporter.com
john.murrill@taylorporter.com
Savannah.Smith@taylorporter.com

Attorneys for Plaintiffs

- 15 -

2148580v.3